MOTION.

Case 4.

October 13.

Case stated.

# Fellows' *vs* Cross *et al.*

ERROR TO THE CLINTON CIRCUIT.

*Sheriff.   Execution.   Substitution.   Penalty.*

CHIEF JUSTICE ROBERTSON delivered the Opinion of the Court.

THE Circuit Judge, after hearing all the evidence on
both sides, dismissed a motion made by the plaintiffs in
error as execution creditors, against the defendant, as
the Sheriff of Clinton, and his surities, for a judgment
for the penalty denounced by the Act of 1811, for a fail-
ure by the sheriff to return, within a month after return
day, a *fi. fa.* which had been delivered to him to execute
in favor of the plaintiffs against B. H. & H. M. Emerson.
And this writ of error seeks the reversal of that judg-
ment.

Proceedings un-
der Ex'on; and
—Agreement be-
tween plaintiff
and defendant in
execution—after
the lapse of one
month after re-
turn day.
It appears that immediately after the reception of the
execution, the sheriff had levied it on some town lots to
which the debtors held only an equitable title, and on a
stock of dry goods, on which other executions in favor of
other creditors had been previously levied by him—that
in due time, he had regularly advertised a sale, and in
good faith, attempted to sell both the goods and the lots,
but failed altogether as to the lots for want of bidders—
that though he had made several sales of portions of the
goods under the prior executions, those executions had

not been fully satisfied, nor had all the goods been sold at the end of the month succeeding the day prescribed for the return of the *fi. fa.* in favor of the plaintiffs—and that about a month after that time, to wit, on the 4th of December, 1838, the plaintiffs, with a knowledge of all those facts, made an agreement with those debtors, the Emersons, whereby, on the payment by the latter of $125, and a promise to pay $75 at the end of three months, and then to give a mortgage on their interest in the town lots, the former undertook to suspend *the execution* for three months, and to continue the suspension for one year longer in the event of the payment of the $75, and the execution of the mortgage; and also agreed that if the sheriff should, in the mean time, be able to complete the sale of the goods and obtain any balance applicable to their execution, he should apply it to the payment of the said $75, and that if under this contract, the whole amount of their debt should be collected, the Emersons should pay to the sheriff *all his commissions.*

It appears also, that the sale of the whole of the goods not having produced a sum sufficient for satisfying the prior executions, the execution of the plaintiffs was returned about the 1st of May, 1839, with all the material facts of the case endorsed upon it.

Not long afterwards, this procedure was instituted, and in the absence of any direct proof as to the fulfilment of the contract of December, 1838, we may presume that the Emersons neither executed the mortgage nor paid to the plaintiffs any more money.

Although the foregoing facts authorize the conclusion that the sheriff acted in good faith, and did not subject the plaintiffs to any injury or even delay, which would have been prevented by a return of their execution within a month after the return day—nevertheless, unless they had approved his act of retaining the execution for the prudent purpose of making the levy of it on the goods available, if possible, as soon as the prior levies should be fully effectuated, his non-return should have been deemed a technical delinquency, which might have authorized a judgment for the severe penalty prescribed by the Statute of 1811.

FELLOWS
*vs*
CROSS *et al.*

Return on Execution.

Defendant in execution, not having performed his agreement, pltf. moved against sheriff.

Sheriff liable to 30 per cent damages for failing to return Execution; tho' pltf. is neither injured or delayed.

FEELOWS
*vs*
CROSS *et al.*

Agreement be-
tween plaintiff
and defendant in
execution, after
sheriff had incur-
ed penalty for
not returning it,
whereby sheriff
is defeated of his
right to substitu-
tion, *may* effect
his exoneration.

But still, the agreement of December, 1838, if made without his concurrence, though it might not have exonerated him from the penalty of 30 per cent, might perhaps have presented ground for exoneration, not only to the extent of the sum received by the plaintiffs, to wit, $125, but to the extent of the whole amount of their execution, because, by thus controlling the execution they suspended and perhaps defeated his right to secure his own indemnity by either proceeding under the levy, or returning the execution and procuring another, to which he might have entitled himself under his equitable claim to substitution—and this the plaintiffs ought not to have done if they intended to enforce the penalty.

Approval or rati-
fication of sher-
iff's holding up
execution, infer-
red from agree-
ment between
plaintiff and de-
fendant, and oth-
er circumstances
and sheriff exon-
erated.

We are of the opinion however, that the agreement of December, 1838, authorizes the deduction that the plaintiff had either directed or thereby approved and ratified the course which had been pursued by the sheriff.

There seems to have been no cause for disapproving what the sheriff had done—the tenor of the agreement authorizes the presumption that he was privy to it, and we should not presume that he would have assented to it had there been any intention to subject him to penalty for any thing he had done or failed to do—his prolonged retention of the execution for three months more was provided for by the agreement, and he was made, in the mean time, the agent of the plaintiffs for effectuating the agreement, and the ultimate payment of *his fees* was also expressly provided for.

These facts conduce strongly if not conclusively, to the presumption that in omitting to make a fruitless, and probably in some slight degree, an injurious return of the execution, he had acted consistently with the authority of the plaintiffs, or that they afterwards ratified his acts, availed themselves of the benefit of them, and waived all technical claim to the penalty denounced by the act of 1811, if they were ever entitled to claim the exaction of it.

Plaintiff's right
to recover *penal-
ty* in such cases
must be made
manifest.

At least there must be great doubt whether these are not the proper deductions from the facts. And therefore, as the title of the plaintiffs should be made manifest in

such a penal case, we do not feel authorized to reverse the judgment of the Circuit Court.

Wherefore that judgment is affirmed.

*Cates* and *Wheat* for plaintiffs.